UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 25-mj-7070-JCB-1

UNITED STATES OF AMERICA

v.

JUANA LIDUVINA AGUASVIVAS

**ORDER ON GOVERNMENT'S MOTION FOR DETENTION**

April 15, 2025

Boal, M.J.

The defendant, Juana Liduvina Aguasvivas, is charged in a complaint with conspiracy to distribute and to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. An initial appearance was held on March 10, 2025, at which time the government moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) (defendant is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)) and 3142(f)(2)(A) (serious risk of flight).

This Court held a detention hearing on March 27, 2025, and April 3, 2025. The government initially called FBI Task Force Officer Heffernan to testify on March 27, 2025. At the resumption of the detention hearing, the government proceeded by proffer.[1] The government submitted two exhibits into evidence. After careful consideration of the evidence, the parties' arguments at the hearing and by motion, and a Pretrial Services report recommending release on conditions, this Court finds that the government has not met its burden regarding detention and is

---

[1] The original proceeding was stopped due to an outburst from the defendant. Her attorney requested that the proceeding continue the following week. This Court granted that request and rescheduled the proceeding for April 3, 2025.

1

prepared to release the defendant on conditions.

I.      **ANALYSIS**

    A.      **The Bail Reform Act**

Under the Bail Reform Act, a defendant may only be detained pending trial if the government establishes either by clear and convincing evidence that the person poses a danger to the safety of any other person or the community if released, or by a preponderance of the evidence that the person poses a serious risk of flight. 18 U.S.C. § 3142(f); United States v. Patriarca, 948 F.2d 789, 791-93 (1st Cir. 1991). If there is some risk, the court should consider whether a combination of release conditions "will serve as a reasonable guard." Id. at 791.

In determining whether suitable release conditions exist, the judicial officer must take into account the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the accused, including family ties, employment and other factors; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g). Each of these factors must be weighed, and the decision on whether to release is an individualized one. Patriarca, 948 F.2d at 794.

The government bears the burden of persuasion to establish that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). Where, as here, there is probable cause to believe that the defendant committed a controlled substance offense with a maximum term of imprisonment of ten years or more, a "rebuttable presumption" of danger and flight arises. 18 U.S.C. § 3142(e). The presumption imposes a burden of production on the defendant to come forward with "some evidence" to

demonstrate that he is not a danger to the community or a flight risk.  United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985), abrogated on other grounds by, United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990).  Without credible evidence to rebut the presumption, the presumption alone may justify detention.  United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985).  Notwithstanding this rebuttable presumption, the burden of persuasion always remains with the government.  Jessup, 757 F.2d at 381.

      B.      **Nature Of The Offense And Weight Of The Evidence**

The government alleges that, between April 2021 and February 2025, confidential informants purchased fentanyl at Aguasvivas's residence numerous times.  Aguasvivas was allegedly involved in at least a half dozen of these narcotic transactions, many of which were recorded.  Some of these recordings captured her instructing the other defendants charged in this case to provide fentanyl to the confidential informants in her residence.  She also was recorded negotiating the price of fentanyl, warning a confidential informant to be careful that someone was not a police officer, and giving a confidential informant money for bringing her a new client.  She also was recorded explaining and providing cocaine and fentanyl "cuts" to mix in with the drugs to make supplies last longer.  In addition, for at least four transactions that Aguasvivas was involved in, confidential informants purchased more than 40 grams of fentanyl from Aguasvivas's residence – an amount that potentially requires a mandatory minimum sentence upon conviction.  Laboratory results have confirmed that the purchased drugs contained fentanyl for three of the four transactions, while the fourth transaction's laboratory results are currently pending.

      C.      **Defendant's History And Characteristics**

Juana Liduvina Aguasvivas, age 65, was born in the Dominican Republic.  She came to

the United States in 1999.  At the time of her arrest, she was working part-time cleaning a barbershop.  She has no criminal history.

### D.    Risk Of Flight

Aguasvivas lives with her husband in Lawrence, Massachusetts.  She has six children, four of whom live in Massachusetts and two in the Dominican Republic.  Her father is deceased, and her mother lives in the Dominican Republic.  Four of her siblings live in the United States and three live in the Dominican Republic.  If released, she proposes to return to her apartment with her husband.  He has a license to carry a firearm, but is willing to surrender the weapon if Aguasvivas is released.  Her husband is a mechanic who has been the primary source of income for their household, and he is willing to be a third-party custodian for her.  Her daughter who lives in the same apartment building is also willing to be a third-party custodian.

Aguasvivas has no legal status in the United States, and ICE has lodged a detainer.  She has a Dominican Republic passport, which reportedly was seized by the arresting agents.  She reports that she last traveled outside of the country in 2019 to visit her mother in the Dominican Republic for seven months.

### E.    Dangerousness

The charges against Aguasvivas involve drug trafficking, which is encompassed within Congress' definition of danger to the community.  United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985).  She has no criminal history.

### F.    Assessment Of All Factors

Aguasvivas proposes to be released to her residence in Lawrence and to have her husband and/or daughter be a third-party custodian if rendered necessary.  After carefully evaluating the evidence in light of the criteria for detention set forth in 18 U.S.C. § 3142, this Court finds that

4

the government has not met its burden regarding detention.

In particular, I have considered Aguasvivas's lack of criminal history, lack of any allegations of violent offenses, her strong ties to Massachusetts, the availability of support from family, and the conditions of release proposed by Pretrial Services.  Accordingly, this Court is prepared to release the defendant and will schedule a hearing to set conditions of release.

    /s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge